Here he, here he, here he, is Honorable Appellant Court for the second judicial visit, now back in session, pursuant to adjournment. Your Honor, Ms. Susan F. Hutchinson, presiding. Please be seated. Your Honor, this case will be dealt with 2-16-0307. State Farm Mutual Automobile Insurance Company, S-7PO, and that is all we have. Plaintiff Appellini, the employee of Plough, defendant of Appellant, currently won't be catching the defendant of Appellant. Ms. Zuniga Yousef, currently won't be catching the defendant of Appellant. Plaintiff Appellini, Mr. Daniel, please be seated. All right, Ms. Yousef. Thank you. Good morning, Your Honors. Counsel, may it please the Court. Zuniga Yousef for the defendant of Appellant, William Plough. The defendant, Mr. Plough, takes appeal from a segregation matter that ultimately proceeded to jury trial on February 8, 2016, where in which a judgment was entered in favor of the plaintiff and against the defendant. The instant lawsuit arose out of a car accident which took place on November 25, 2013, in which the plaintiff, State Farm, alleged defendant, Mr. Plough, was negligent in the operation of his vehicle, and that this alleged negligence was the proximate cause for the alleged damages sustained by State Farm's insured Annie Rodriguez. The first issue brought before you for review is whether the circuit court abused its discretion in denying the defendant's motion to debar plaintiff's rejection of the mandatory arbitration award. What's our standard of review on that motion? The standard of review, Your Honor, is abuse of discretion. Okay. The trial court in this case had a full hearing on that, correct? Yes, Your Honor. The circuit court abused its discretion in denying defendant's motion to debar plaintiff from rejecting the arbitration award when it failed to impose sanctions under Supreme Court Rule 90G or Supreme Court Rule 219C when plaintiff failed to appear at the arbitration pursuant to a 237 notice. I mean, does that have to be preserved in any way in the arbitration hearing, or is that independent? I'm sorry? To the trial court. Would they have to make a request at the arbitration hearing for failure to appear to just get a sanction at that point, or does the sanction have to come from the trial court? Yes, Your Honor. The sanction has to come from the trial court. Okay. The arbit panel knew that the adjuster didn't appear, correct? Yes. Still found that parties proceed in good faith? Yes, Your Honor. But as you are aware, good faith is not a prerequisite that is required in order for a court to issue sanctions. Why couldn't the trial court accept State Farm's explanation as to why the adjuster didn't appear? It's not that the court could not accept the explanation that the State Farm adjuster couldn't appear. It's that the excuse that was allegedly provided without an affidavit was not, according to standing case law, surmounting to that which is extenuating, nor is it within reason that it was a reasonable excuse. Was an affidavit required? An affidavit is required, yes. And that is by local rules? I'm sorry, Your Honor. An affidavit is not required. What was the arbitration award? The arbitration award was in favor of the defendant. I realize that, but was there a dollar amount? There was zero dollars, and there was a cost award for the defendant. Your Honor, the two issues in that are the adjuster not appearing in the late 90C packet, correct? Correct. Are there any other issues with that, or just those two? Those are the only two at the time of the arbitration. Now, the 90C packet was rejected, correct? The 90C packet was offered at the time of the arbitration, and defense counsel objected, yes. And it was rejected by the arbitration? It was rejected by the arbitration. What was the prejudice on that? I mean, aren't we really just talking about the failure of the adjuster to appear? No, we're not. The failure to appear is one separate sanction that should be imposed under 90G. There is another sanction that should have been imposed in accordance with 91B, and that is whether or not there was a participation in good faith. There are two separate sanctions under two different laws and two different facets that the trial court could have used and should have used in imposing these sanctions on the plaintiff. The first one, as I was stating, was according to 90G, in Guttick v. Campbell, the court found that the defendant party must show that it had an extenuating circumstance or a reasonable circumstance why it failed to appear. And absent of doing that, it is really making a mockery of the arbitration process. It defeats the entire essence and the purpose of the arbitration process. When the plaintiff failed to appear, this is State Farm. State Farm regularly appears before court all over the state of Illinois and was regularly appearing before this particular court. They alleged verbally, orally upon inquiry of the court at the hearing for the motion to bar that the reason that they couldn't appear, the counsel for a plaintiff stated that she was told that the State Farm adjuster apparently had a conflict, and the conflict was a conflict arising out of another lawsuit. They provided no, at any time, an affidavit to state which lawsuit the adjuster was allegedly engaged in. A court number, a jurisdiction, a judge, none of those things were provided. Was there any indication that this regularly happened in front of this court with State Farm? Did what regularly happen? Well, you said that State Farm regularly appears before that court on these type of cases. Yes. And could not the trial judge look at the trial judge's history with State Farm to say that, you know, this never happens with State Farm? It must have been something out of the ordinary. It's not for the trial court to speculate, Your Honor. So if a witness doesn't appear, you absolutely can depower the other party. That's not what I'm saying, Your Honor. If the witness doesn't appear, they must at the very minimum provide a reason and an extenuating circumstance why they didn't appear. And they did that, and then the trial judge bought it, and you're saying that was unreasonable. It is unreasonable. And arbitrary and fanciful and all those things that go with an abuse of discretion. Yes, Your Honor. Okay. There is no indication. There was no, first of all, yeah, there was no affidavit provided. There was no case number, docket number, where they were and why they failed to appear, other than they had a conflict. To allow a party to not appear at an arbitration simply because they have a conflict, that's a very dangerous precedent. Let me ask a question. On the day that this conflict occurred, can an arbitration panel continue a case, or does that have to be done by a trial court? Also must be done by a trial court. Okay. So they would have had to, State Farm would have had to go try to get to the trial court before the arbitration hearing to ask for a continuance, correct? Correct. But State Farm made a calculated decision that they could proceed in good faith by asking questions, by participating as best they could. They also thought they could tender their packet, which didn't work out. But why then would that be an abuse of discretion to accept their participation and their reason when there is no law? Maybe there's a local rule that says they have to provide an affidavit, but there's no law that says they have to. Even if there is no law that requires an affidavit, they didn't provide an actual extenuating circumstance. The fact that they have a conflict without any further documentation or proof, and also it should be of note that that was only presented by State Farm upon inquiry of the court. State Farm did not provide an excuse as to its noncompliance to the 237 even after the motion to bar had presented itself. It was only upon the inquiry of the court that they tendered an excuse saying that the plaintiff's attorney stated she was told by some unknown third party that apparently the State Farm adjuster had a conflict. Again, Your Honors, to allow a party, and even if it is State Farm who is regularly in this court and has a pattern of history with the court, State Farm must be treated the same as any other litigant. Even if that were to be true, to allow a party to simply state I was not available because of a conflict completely defeats the essence of an arbitration process. And you keep saying apparently. Apparently. I thought that the answer of counsel would have a last-minute conflict with an additional State Farm case that he had to attend. Was the word apparently used? No, perhaps it's just the way I'm speaking. Because I think that would change the essence of the presentation, although the judge could still accept apparently versus had a conflict. It sounded more like the attorney, whether when asked, prompted, or offered, the adjuster had to be someplace else for another case. At the last minute, we found that out. Right. And that's different than apparently had to be someplace else. Yes. Your Honor, the fact that they were engaged in another litigation matter, at the very least, they would have known about this other litigation matter even one day prior to the arbitration. One day prior to the arbitration, the defendant presented an emergency motion to allow testimony via telephone because the medical condition of Mr. Plow confined him to his home. Plaintiff was present at that emergency motion presented by the defendant on December 16th, one day prior to the arbitration. At the very least, plaintiff surely must have known that there is another litigation matter that they are engaged in one day prior to the arbitration. Again, there are lots of lawyers but a limited number of adjusters. How do we know that? How do we know? How do we know they should have known that that adjuster had to be in another courtroom on this emergency motion? Your Honor, on this very case, there were two different adjusters at a minimum that appeared in this litigation matter. One of the arbitration was Matt Piskanka, and the gentleman who appeared at the trial was a different gentleman. There are multiple adjusters in multiple jurisdictions that appear for State Farm in Cook County, in every jurisdiction. They have multiple adjusters. More significantly, whether they have a shortage of adjusters or not, they had this particular hearing that was being heard on that morning. To disregard the importance and the value of that arbitration is to allow State Farm to use the court system at its pleasure. They knew that they had this, and they had to make an arrangement at the very least they had to move to continue prior to the arbitration being heard. Beyond the violation of the 237 notice, the trial court also abused its discretion when it failed to debar rejection of the arbitration award, when it failed to recognize that the plaintiff participated in bad faith, subjecting it to debarment under Supreme Court Rule 91B and 219C. Parties to an arbitration hearing must participate in the hearing in good faith and in a meaningful manner. Good faith participation means subjecting the case to the type of adversarial testing that is expected at trial. Merely cross-examining witnesses and making arguments is not the type of adversarial testing of a case that would be expected at trial. A backbeat finding by an arbitration panel is not a prerequisite to entry of a debarment order by the trial court. And this trial court had a hearing on this particular motion. Yes. It was a combined motion first to reject and then your motion to debar. So that's what the trial court heard at the time, correct? I'm not sure what you mean by a combined motion. Well, there was a motion to reject by State Farm, and there was a motion from your client to prevent that, correct? There was no motion, Your Honor, by the plaintiff to reject. They just simply rejected in a timely fashion. And then we brought a motion to bar that rejection. Although it's not dispositive, the court can consider the good faith finding by the panel, correct? Yes. It's not an irrebuttable presumption, Your Honor. It's just prima facie evidence that there is possibly good faith, that there is good faith participation. It's not an irrebuttable presumption. And here, as Your Honors are aware, the plaintiff failed to submit a 90-C packet 30 days prior to the arbitration and failed to appear at the arbitration. The plaintiff had six weeks' notice prior to this arbitration that this arbitration was to proceed. It had six weeks' time to tender proofs through a 90-C packet to the defendant to bypass any kind of foundational evidentiary rules. The plaintiff, when it had a last-minute conflict, could not then present its case in chief, its prima facie case at the arbitration hearing. This plaintiff, State Farm, cannot possibly have believed that this is the way to proceed at trial. They could not have proceeded in a similar fashion at trial. The Supreme Court and courts have held repeatedly that this arbitration must be given the same kind of adversarial testing as you would at trial. You cannot appear at trial and say, I have a last-minute conflict, and you cannot appear at trial ignoring Supreme Court rules and attempting to bring in evidence without compliance with Supreme Court rules. This is the very definition of bad faith. To say that the defendant was not prejudiced, first of all, in Williams v. Dorsey, the court found it is impossible to gauge, actually, how much a party, a non-offending party, would have been prejudiced. In this particular circumstance, that actually is removed because at the arbitration, when Andy Rodriguez was there and William Plow was present, William Plow prevailed at the arbitration. At the trial, when State Farm appeared with its proofs and William Plow was not present, State Farm prevailed and William Plow lost. William Plow did not have the ability to cross-examine or test what would be the evidence that would be presented at trial. We were deprived of this at the arbitration. There was absolutely a prejudice that was suffered by William Plow, by State Farm appealing to appear. Your client knew what State Farm was asking, correct? You knew the dollar amount. The dollar amount. You knew it was for damage and for medical bills. There was nothing else pending, correct? Property damage and the medical bills. Correct. And so you have that figure identified. What didn't you know? We didn't know how they came up to that figure. We don't know the damages. We don't know the estimate. We don't know what the damages are. We don't know where are the damages to the vehicle. We don't know what are the medical bills for. We don't know any of that. All we know is that they're alleging that out of this accident, Annie Rodriguez suffered this injury, both personal and property damage, and this amount were collected. In fact, that complaint, which is another issue that is to come up, was pled as an equitable subrogation complaint. There's nothing from the complaint that would determine for us what exactly a plaintiff intends to proceed with that trial. Further, it is the plaintiff's burden to prove what it is that they're alleging against the defendant. It's not up to us really to speculate or second guess what it is that they're going to prove. They have to prove it in court in order to prevail. The fact that they couldn't do that because they weren't there and they had no excuse for not being there. They didn't move to continue the trial. They provided no reason why. The trial or the arbitration? The arbitration. The arbitration. Then they further argued at the hearing that they were prevented from acting in good faith because the defense counsel objected to the tendering of the 90C packet, even though it was late. The court has addressed this kind of catch-22 argument. It was entirely within the control of the plaintiff to provide their necessary proofs within the 30 days. And if they couldn't provide those proofs within the 30 days prior to arbitration, again, they should have moved to continue. If they didn't know, allegedly, I'm sorry, if they didn't know that they were going to be available on the date of the arbitration, surely they knew one day before the arbitration that they had not submitted a 90C packet. They still didn't move to continue on the basis that they needed more time to submit this 90C packet. Let me ask you, your time's up already, but let me ask you a quick question on the Dead Man's Act. Was Mr. Plow ever declared to be under a legal disability to invoke the Dead Man's Act? Yes. When did the trial court actually make a finding that he was legally disabled? The trial court was presented with a motion. To appoint a special representative. The motion did talk about legal disability. The trial judge specifically appointed this special representative. Correct. But did not make any reference whatever to legal disability either in his findings or in the order. But the trial court granted the defendant's motion its entirety. It didn't amend anything. It didn't make an abrogation. It didn't qualify or quantify anything that was asked for in the wherefore prayer of the motion of the defendant. The trial court granted that motion its entirety. That motion asked to appoint Ryan Blues a special representative pursuant to a finding that William Plow was legally disabled. The trial court's order stating that it's going to appoint Ryan Blues without any amendment is clearly indicative that the entire motion was granted. Does the definition of a representative only include a guardian or guardian enlightened? Absolutely not. A legally disabled person? I'm sorry. I'm sorry. When we're talking about a legally disabled person, is a representative under the definition of the code only a guardian or guardian enlightened? No, it is not, Your Honor. First of all, the special representative was appointed pursuant to 2-1008. That was a proper appointment. This has also been voiced in Kosiak v. Kelly. It was a proper appointment to have Ryan Blues as a special representative. The fact that the court later found that the appointment should have been under a definition clause of the Dead Man's Act as if it is a prerequisite to appoint a special representative is completely incorrect. The special representative was appointed pursuant to a finding of legal disability. In fact, on the morning of the trial when the plaintiff brought a motion to clarify the order entered on January 29th, the court went through the procedure, the evidentiary hearing it conducted to say that, first of all, the plaintiff did not object to any of the grounds of mental incompetency, continue to not object to that, even on their own motion to clarify the record. The court indicated it conducted a full evidentiary hearing, and based on the evidence provided by William Plow, it granted defendant's motion. At that time, Your Honor, on January 29th, the court still did not abrogate, amend, or change any part of its order where it granted defendant's motion in its entirety, which is inclusive of declaring William Plow legally disabled. Thank you. As Justice Burke indicated, your time is up. You will have an opportunity to reply. Thank you, Your Honor. Thank you. Mr. Ruffke. Your Honor, if I may correct the record, my name is James Temple. Mr. Ruffke has since left our office after replying to. Okay. I apologize. No, my apologies, Your Honor. I'm sorry. Your name? James Temple, T-E-M-P-L-E. Thank you. Appearant for State Farm. You may proceed. Your Honor, I will try to be as brief as possible on this. I don't think there is any basis in law to reverse the trial court's answer of judgment on a jury verdict in this case, starting out where the appellant did with the prior hearing and trial court hearing on their motion to debar the arbitration rejection. The arbitration panel found that State Farm participated in good faith. It had its driver available. The attorney handling that arbitration hearing attempted to present its 90-seat packet to the panel to establish damages. There's no evidence in the record as to when State Farm learned of the trial conflict or if it was the day of. Well, there is some logic to the issue that if you have a hearing date set, you check on your witnesses. You make sure that the people that you need are available, including especially a 237 witness. And that apparently didn't happen, nor was there any reason on the day of the arbitration why that 237 witness wasn't present, was there? Your Honor, there's no record from the actual arbitration hearing itself as to what was discussed and who was available or not available or what notice was given in order to what discussions were made with the arbitration panel. What we do know is that the arbitration panel found that State Farm participated in good faith. And a subsequent hearing on this exact issue was presented to the court. A full hearing was conducted, as Justice Berkwood pointed out earlier. And the trial court found that State Farm not only participated in good faith, there was no basis to go forward with a sanction of debarring the rejection. And we believe that's in the trial court. The practice of the law these days is about best practices, best practices. It's best practice to do this, best practice to do that. There aren't any necessarily Supreme Court rules on all of these best practices yet. But it seems like if a witness can't be present, and you have this motion to debar pending, or your client does, wouldn't best practices indicate maybe an affidavit or some indicia of where that witness was that day would be something to present to the trial court? And that would be an issue for, you know, Supreme Court rules. And I think the best practices is to look at what the Supreme Court rules dictate is necessary in opposing these motions or bringing these motions, as well as case law precedent. And there's nothing that requires an affidavit of unavailability or anything in the rules. Or the statutes require such an affidavit. In the trial court level, the defendant, the movement, has the burden to present their case on the motion to debar. It's not our job to disprove their motion to disbar. They did not carry the day at the trial court level on their motion on that issue, Your Honor. And I think it's interesting, a couple moments ago, as Counsel pointed out, the prejudice was, well, they didn't know what the damages were, they didn't know what the damage to the vehicle was, and they didn't know what the injuries were. So they were prejudiced at the art level. While they had the driver of the vehicle sitting there available for cross-examination on all of those issues, there was no prejudice at the art level, Your Honor, which is, in my understanding, why the arbitrary jury, there was no bad faith and, in fact, found that there was good faith by all participants, and the trial court found the exact same thing on the defendant's motion. Why isn't Annie Rodriguez's testimony about the accident barred by the Dead Man's Act? I don't believe Annie Rodriguez's testimony is barred by the Dead Man's Act, Your Honor. Why is it? Why is it not? Why is it not? Okay, I'm sorry. I misunderstood. Ms. Rodriguez is not a party in interest. State Farm is suing as a separate deed. Well, she may not be a party, but, I mean, we know from that $6,000 U.S.C. case or whatever it was, that if you have a financial interest in a case, that brings you as an interested person, not necessarily a main party. Even if they're an interested party, Judge, on this case, the Dead Man's Act can still be waived, which it was in this case. How is it waived? The Dead Man's Act can be waived if it's not objected to at the time of trial after relevant portions of the testimony.  In this case, Your Honor, defense counsel at the trial court level cross-examined Ms. Rodriguez extensively as to what she saw Mr. Plow do and ultimately established Mr. Plow crossing the center line and striking her vehicle while she was stopped. That was after the motion in limine was denied, correct? Correct, Judge. I mean, you object to the testimony. You say it shouldn't come in, but then when it comes in, you don't just sit on your hands in front of a jury and say, I'm going to stand on my objection and hope that my client has money to appeal this or the appellate court agrees with me, whatever. You cross-examine the witness, do you not? You cross-examine the witness, Judge, but that, in fact, opens the door. If you cross-examine the witness on that issue as to what the defendant, who is otherwise disabled from testifying, did, you open the door. She does not have to do that. But she only testified. Okay, the motion in limine was denied. Testified to what she saw, the events of the occurrence of the accident. She testified to that on direct, correct? Correct, Judge. How does crossing on what she already testified to opening the door to something that the court allowed in over objection? That portion of the testimony was not objected to. The motion in limine was or not? The court denied the motion in limine. I know that, but that's still an objection. The motion in limine is still an objection to the testimony. You're saying keep it out, Judge, and the judge says, no, I'm letting it in. That's an objection to the testimony. I think the court's ruling, if I may, Your Honor, the court's ruling on its motion to deny the motion in limine was for failure to bring these motions to limine in accordance with the scheduling order. That was my understanding of the post-trial reasoning of the court. Now, regardless as to whether or not the court should or should not have addressed that motion in limine, it's still incumbent upon the person asserting the Defendant's Act to properly make those objections at the time the evidence is coming in. So on direct examination, when Ms. Rodriguez was going to testify as to the acts of Mr. Plow, that's when the defendant's objection should have been made. It was not made in this case. Had she been reimbursed by State Farm for all of her expenses? Ms. Rodriguez, I'm speaking. I don't know if she personally was reimbursed, Your Honor. Well, my question is, did she have anything to gain based on the outcome of the trial? If all of her expenses had been covered, then obviously she wouldn't. Correct. My understanding, Your Honor, is that there was a deductible at issue for her of a couple of hundred dollars. It was $250. If, in fact, State Farm won the case, she'd be fully, she'd be reimbursed fully. If they won it partway, she'd be reimbursed partway. And if they lost, she would be on the hook for $250, correct? Correct, Your Honor. So she had a financial interest in the outcome of the case. She had a financial interest, yes, Judge. Doesn't it seem unusual that if she had sued herself, she couldn't have testified to certain things, but because State Farm sues on her behalf as under the separation issue, that she now is a person who you're arguing doesn't have an interest in this case? Well, you didn't. You argued first, and now you've admitted maybe a $250 interest. But let's assume, you know, it seems like a very uneven application of law. It may be an uneven application of law, Your Honor, but the fact still remains that Ms. Rodriguez was not a party to the case. Now, she may have had a financial stake. She could have not have appeared. We could have had to subpoena her or had her arrested and brought to trial. She voluntarily appeared, but she was not a party to the case. She had nothing to lose or gain other than a possible deductible, and I don't know if that deductible was funded by State Farm before the trial even occurred or if they waived the deductible in its entirety, Judge. Well, the language of the Dead Man's Act is no adverse party or person directly interested, right? Correct, Your Honor. So is it possible, then, that she may have been directly interested by virtue of being out the $250 deductible? Yes, Your Honor, that is a possibility that she could be an interested party for the $250 under the Dead Man's Act. Do we then have to consider if that interest is de minimis or is interest just an interest? We don't have to. If there's any money owed or any money to gain, $1, $2, $250, she's interested. Or do we have to consider interest in the sense of whether it's a de minimis interest in terms of the whole award or anything of that nature? I think the case on this point, Judge, is for interest of party, you take the interest as a whole in the litigation. I'm not sure I've seen anything that talks about de minimis factor as to what level of interest a party has. It's just something that is taken into account as a matter of a whole. There is a case, and I believe it's People v. $5,608 in Currency. It's a case in the 2nd District where the appellate court says, if the testimony of the witness does not show direct, certain, immediately pecuniary interest, the witness's interest, if any, goes merely to his or her credibility and not to his competency to testify. What's your position on that particular? I think that's the exact position we find ourselves in this case. Ms. Rodriguez has a $250 interest in the litigation that is for over $8,000. Under the case you just cited, Your Honor, then I think that would be a de minimis standard to determine whether or not she is an interested party to the litigation and to whether the actual de minimis effort applied to her testimony in that regard. So I don't think the $200 interest in a deductible that she may or may not care about should sideline the fact that State Farm then has a witness to testify on its behalf. Well, we don't have a record of the ARP proceedings, apparently. Correct. But she did testify at trial to, or did she testify at trial, as to the amount of damage that she had to her vehicle and the amount of her medical bills, or was that all testified to by the representative from State Farm? If I recall correctly, Your Honor. The adjuster. The adjuster, yes. If I recall correctly, yes, she did testify to the damages to her vehicle. She was shown photographs of her vehicle and authenticated that the damage to her vehicle, as depicted in the photographs, came from the accident at issue. She was further questioned on direct examination and cross-examination as to her physical injuries that she sustained as a result of the accident. Now, I believe that the medical bills at issue came in at least at trial through the adjuster. Going back then briefly to counsel's comments on the amount of the allegations of the complaint,  Your Honor, I think we play it particularly true to the Supreme Court rules that a short definitive statement of the case is all that's necessary for a small-things complaint. To follow the defense logic that we then need to attach copies of policies or contracts or specifically what is contractual contribution or equitable contribution defeats the purpose of the Supreme Court rules in this regard. I think going back then to this Dumb Man's Act, even if Mrs. Rodriguez, who is in the state of argument, is an interested party, I think the issue has been waived by counsel's conduct at the trial, Your Honor. And even if not, I think there's substantial evidence in the record to support the verdict through the police officer and there's substantial evidence in the case. The case was presented to a jury trial and they heard all the evidence. It entered first in that regard. Of course, the police officer wasn't there when it occurred. He simply came afterwards to investigate, correct? Correct, Your Honor. He came in to the scene afterwards, talked to both parties, and testified that the defendant admitted to him that he attempted to stop, lost control of the vehicle, and struck Mrs. Rodriguez's car. We have a statement against interest that was allowed into the record, Your Honor, and admission by a party opponent. And, of course, they were objecting to the police officer as being an interested party too, were they not? Yes, they were, Your Honor. And I don't think there's any basis in the law to determine that the police officer is an interested party in this litigation. And then just briefly, Your Honor, as to the motion to debar that counsel started off with today, that was not raised in their post-trial motion. They waived that appellate argument. They should have given the trial court an opportunity to correct itself as they think the court was at error. They did not present that, preserve that, or give the opportunity to the trial court to correct itself if, in fact, they believed he ruled incorrectly. Thank you, Your Honors. Thank you. Ms. Youssef. Thank you. Your Honors, I'm confused why Annie Rodriguez, while there is a concession that there is a minimum of a deductible of $250, still doesn't have a financial interest. The definition of her having pled a monetary amount would make her having a financial interest, A. Let's assume she does. Is it incumbent upon you at trial to make a contemporaneous objection to her testimony as to the events? No, it is not, Your Honor. It is well-settled Illinois law. To save a question for review, the objection need not be repeated each time similar matters are presented where the court has previously ruled. This has been ruled in Navi v. Rainbow Tire Service. The Supreme Court has made it clear that after the trial court has ruled, it is not necessary to constantly interrupt counsel and repeat the same objection after a ruling has once been obtained. It doesn't have to be in the post-trial motion, though. The issue of the defendant's motion in limine was the very essence of the defendant's post-trial motion, Your Honor. So his statement that it was not included in the post-trial motion is incorrect? That is an incorrect statement. It wasn't the statement that wasn't included in the post-trial motion about the motion to debar. Right. Right. Which that also, Your Honor, that is a misapplication of the law. There was no judgment entered at the end of the debarring. At that moment, the party, William Plow, had the option of exercising its right to do an interlocutory appeal. The committee notes the very rule, the point of size 366, says that once a case is accepted for appeal for purposes of judicial efficiency, all those cases, all those issues are now accepted for appeal. Well, isn't there some, there is some theory on motions for, post-trial motions, is to allow the trial court to correct an incorrect ruling. Was the trial court ever given an opportunity by way of a motion to reconsider or anything in the post-trial motion to correct what you believe to be that error in the motion to debar? While the opportunity is available and the defendant can give the trial court an opportunity to correct itself, it's not mandatory. Right. So you're saying there was no such opportunity allowed by way of your motions or? No, because at the time of the post-trial motion, Your Honor, it had been well over 30 days after the ruling on the debarring of the plaintiff's motion had been heard. The court actually could not procedurally hear anything about the debarring of the motion at that time. Once that issue had not been preserved 30 days after that hearing on the debarring, it's now within the jurisdiction of the appellate court if we choose to appeal post-trial, which is what we have done. Well, if the trial court doesn't have the jurisdiction, how could we have it if it wasn't identified? Your Honor, I meant in terms of time, the 30 days had passed, more than 30 days had passed after the debarring hearing. At that point, the trial court was only going to consider the issues presented at trial, not all the issues that proceeded throughout the course of litigation. Your Honor, the next contention that the defendant weighed the Dead Man's Act protection by opening the door when allegedly eliciting testimony regarding events that took place in the defendant's presence, in Ray's state of Stewart, the court held cross-examination does not necessarily trigger the waiver under the Dead Man's Act. Questions that are general observations of the decedent will not act as a waiver to the Dead Man's Act. None of the questions plaintiff cites in his brief that the defendant's representative asked in cross-examination are eliciting testimony that took place in the presence of the defendant, nor are they questions that will elicit testimony the defendant would have been able to refute. These are all questions regarding Andy Rodriguez's general observations concerning the event. No questions were asked to Andy Rodriguez about the speed of the defendant, about whether he had control of his vehicle, whether he did anything to avoid the accident, or whether he lost control of that vehicle. Therefore, there was no trigger of the waiver of the Dead Man's Act. It is well established that any type of general observations are permissible. That is the only cross-examination that occurred of Andy Rodriguez. Is this error harmless based upon the testimony of the police officer? Based upon the testimony of the police officer? No, it is not harmless, Your Honor. The testimony of the police officer, the police officer's testimony, he three times, upon being asked, placed the defendant in the plaintiff's vehicle, Andy Rodriguez's vehicle, and Andy Rodriguez in the defendant's vehicle. He also misplaced the directions both the drivers were in. He kept testifying that the driver of the Nissan Xterra was William Plow. It's undisputed fact that, in fact, it was the other driver. He didn't misplace who made the statements to him. He did misplace that as well, because in one respect he stated that it was Mr. Plow who spoke it, but he also was adamant that the speaker of that statement was, in fact, the driver of the Nissan Xterra. Further, Your Honor, that statement is not an admission against interest. That statement simply was that he lost control of the vehicle. There are other plausible explanations why that vehicle lost control, and William Plow is not there to refute that statement. There is no admission of negligence. There is no admission that there is something that William Plow did that a reasonable person would not do in a certain circumstance or that he did something that not a reasonable person would do in a certain circumstance. So there's no admission against William Plow. First of all, the police officer still has not correctly identified who actually made that statement, because, as I said, he stated that it was William Plow who made that statement, but he also said that it was the driver of the Nissan Xterra. But the jury heard that, and the jury, I'm assuming, also heard the correction on redirect about, now wait, who made these statements? How did that happen? There was no correction made on redirect, Your Honor. The jury, in fact, asked a question during deliberation. The question that was asked was, was there a ticket issue? That could actually be indicative of that the testimony of the police officer was so speculative that they had to ask a further question whether or not there was actually even a ticket issue. So the police officer's testimony was being moved to bar not because only that he had an interest, but because all the statements that the police officer made are gathered entirely by hearsay, and those hearsay statements were made by Annie Rodriguez, who is absolutely a barred witness according to the Dead Bans Act. Therefore, those testimony of Officer Freeling, at best, is speculative. It is all confusing. Did the trial court answer that question about the ticket? The trial court did not answer that question because there was no, although it's been pled or it's been argued in the appellate's brief, that it's a complete misstatement of the facts as they occurred. There was no guilty plea that was submitted to the jury. It was never even offered into evidence. Plaintiff failed to offer that certified guilty plea into evidence. It attempted. So the trial court or the jury still made the decision based upon the testimony that it heard rather than an answer to a question that it asked? Your Honor, the jury made the decision against William Plow, the defense contends, largely on the testimony of Annie Rodriguez because the testimony of Officer Freeling was, again, speculative. So speculative that the jury asked if there was a ticket issue despite Officer Freeling testifying at the trial. So the jury concluded based on Annie Rodriguez's testimony. And Annie Rodriguez's testimony was given completely free rein. She talked about the direction, not only the direction that the defendant was traveling, she talked about his loss of control of vehicle when he hit his brakes. How she would know when he hit his brakes is entirely speculative. And that was, I assume, questioned on cross-examination. How could you know he hit his brakes? That was questioned, correct? Your Honor, yes. In cross-examination, everything that was questioned was based on her direct testimony. Okay. So it was all challenged. I believe so, yes. Okay. All right. Counsel, it's time to wrap up. Your time is up. So if you would give us a summary, if you choose to. Your Honors, I just ask that William Plow throughout the course of litigation, the rulings that were made by the trial court, the circuit court, the case law overwhelmingly favors William Plow. Since the time of the arbitration, he suffered extreme prejudice because the trial court abused its discretion repeatedly in exceeding all bounds of reason as to why it chose to first not debar rejection of the arbitration. And second, despite finding that William Plow was legally disabled, it continued to outright bar the application of the Dead Men's Act. The rulings of the circuit court are confusing. They set dangerous precedents. They leave no room or no idea or direction where litigants how they should actually argue in court. The defendant was penalized for making objections pursuant to Supreme Court rules, as it was during the time of the motion for barring the arbitration. For the interest of justice and because of the overwhelming case law, William Plow asks that you vacate that judgment and enter debarring against the plaintiff. Thank you, Your Honors. Thank you. All right. Thank you this morning for your arguments. We'll take the matter under advisement and we will issue a decision in due course. We will stand in recess now to prepare for our last case. Thank you.